**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CESAR NEJATENGO GALICIA,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

Plaintiff,

v.

BRIGHTON FLAMING GRILL INC.,
86TH ST FLAMING GRILL INC.
d/b/a 86 FLAMING GRILL,
760 BROOKLYN FLAMING GRILL CORP.
d/b/a BROOKLYN FLAMING GRILL,
BEDFORD FLAMING GRILL INC.,
FLATBUSH FLAMING GRILL INC.,
NEW UTRECHT FLAMING GRILL INC.,
f/k/a FLAMING GRILL, and
BASHAR [LNU].

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff CESAR NEJATENGO GALICIA, (hereby, “Plaintiff”, or “Plaintiff GALICIA"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants BRIGHTON FLAMING GRILL INC., 86TH ST FLAMING GRILL CORP. d/b/a 86 FLAMING GRILL, 760 BROOKLYN FLAMING CORP. d/b/a BROOKLYN FLAMING GRILL, BEDFORD FLAMING GRILL INC., FLATBUSH FLAMING GRILL INC., NEW UTRECHT FLAMING

GRILL f/k/a FLAMING GRILL (together, "Corporate Defendants") and BASHAR [LNU] ("Individual Defendant" and together with the Corporate Defendants, the "Defendants") and states as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid overtime premiums, due to compensation of overtime at a straight time rate; (3) liquidated damages; and (4) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid overtime premium, due to compensation of overtime at a straight time rate; (3) unpaid spread-of-hours premiums; (4) statutory penalties (5) liquidated damages; and (6) attorneys' fees and costs.

3. Plaintiff also alleges that, pursuant to the Earned Safe and Sick Time Act ("ESSTA"), he and similarly situated individuals were not provided any paid time off for the care of themselves and/or family members. Plaintiff and Class Members seek all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

4. Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA").

5. Moreover, by retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

6. Finally, Plaintiff alleges that Defendants unlawfully retaliated against him shortly after Plaintiff lawfully complained to Individual Defendant about his missing hours. Plaintiff seeks all applicable remedies under the FLSA and NYLL, including compensatory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

9. For all relevant periods, Plaintiff GALICIA was a resident of Brooklyn County, New York.

10. Defendant BRIGHTON FLAMING GRILL INC. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 1023 Brighton Beach Ave., Brooklyn, NY 11235.

11. Defendant 86TH ST FLAMING GRILL INC. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 520 86th Street, Brooklyn, NY 11209.

12. Defendant 760 BROOKLYN FLAMING GRILL CORP. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 760 McDonald Ave., Brooklyn, NY 11218.

13. Defendant BEDFORD FLAMING GRILL INC. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 2423 Avenue U, Brooklyn, NY 11229.

14. Defendant FLATBUSH FLAMING GRILL INC. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 1953 Flatbush Ave., Brooklyn, NY 11234.

15. Defendant NEW UTRECHT FLAMING GRILL INC. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process located at 5425 New Utrecht Ave., Brooklyn, NY 11219.

16. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and the regulations thereunder.

17. Individual Defendant Bashar [LNU] is the principal and owner of Corporate Defendants and has operational control of Corporate Defendants. Individual Defendant exercises—and also delegates to managers and supervisors—the power to the power to: (1) fire and hire employees; (2) supervise and control employee work schedules; (3) determine the rate and method of pay; (4) maintain employment records; and (5) otherwise affect the quality and terms and conditions of employment for Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to Individual Defendant regarding any of the terms of their employment, and Individual Defendant would have the authority to effect any changes to the quality and terms of their employment. Individual Defendant has authority over all employee related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant had the power and

authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members and could reprimand employees.

18. At all relevant times, Individual Defendant exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of Corporate Defendants.

19. At all relevant times, Individual Defendant exercised direct and actual functional control and oversight of the employment terms and conditions of all of Defendants' employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

20. At all relevant times, Individual Defendant ensured the Delis (defined below) operated efficiently and profitably by frequently visiting the Delis in order to (i) inspect the operations and quality of food, service, and hygiene of the Delis, (ii) meet and confer with the Delis' management to discuss operations, sales, and overall status of the Delis and their employees, (iii) pick up or drop off supplies, ingredients, or paperwork, (iv) personally supervise employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) and managers and monitor their individual performances of duties and behaviors to ensure they effectively complete their job duties, and (v) directly or indirectly reprimand any employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) or managers who did not perform their duties sufficiently or correctly, or displayed inappropriate behavior.

21. At all relevant times, Individual Defendant held and exercised direct and actual authority, control, and oversight over all managers and supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

22. Corporate Defendants own and operate 6 delis within Brooklyn that are located at:

i. 1023 Brighton Beach Ave., Brooklyn, NY 11235;
ii. 5425 New Utrecht Ave., Brooklyn, NY 11219;

iii. 760 McDonald Ave., Brooklyn, NY 11218;
iv. 1953 Flatbush Ave., Brooklyn, NY 11234;
v. 2423 Avenue U, Brooklyn, NY 11229; and
vi. 520 86th Street, Brooklyn, NY 11209, (collectively, the "Delis").

23. Corporate Defendants operate as a single integrated entity that possessed common management, centralized control of labor, common ownership, and interrelated operations. The Delis are commonly owned by Individual Defendant who holds a management position in all the entities and has the power to make binding financial and labor decisions for the six entities.

24. The Delis' operations are also interrelated as evidenced by the Delis serving similar menu items comprised of, among other things, sandwiches, burgers, and gyros. *See* **Exhibit A** (showing Corporate Defendants' menus are nearly identical). Further, each Deli uses similar branding and decals. *See* **Exhibit B** (showing that all stores share a similar design and logo).

25. Moreover, during all relevant times, Defendants routinely interchanged employees, supplies, vendors, and ingredients (including, but not limited to, snacks, sandwich supplies, and cleaning supplies) between the Delis. Specifically, throughout Plaintiff's employment, Defendants transferred Plaintiff to different Delis, including the 1023 Brighton Beach Avenue and 5425 New Utrecht Avenue locations, to ensure staffing needs were met, demonstrating centralized control of labor relations.

26. Moreover, Individual Defendant operated as a centralized manager that dealt with hiring, firing, administering, and managing human relations, including implementing an identical illegal wage and hour policy, for all of the Delis' employees.

27. Defendants' Delis share an adequate amount of commonalities and purposes that clearly classifies them as a single integrated enterprise.

28. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members were directly essential to the business operated by Defendants.

29. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

30. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including, but not limited to deli workers, cashiers, cooks, porters, and delivery persons, among others, employed by Defendants on or after the date that is 6 years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

31. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including: (1) unpaid wages, including overtime, due to time shaving; and (2) unpaid overtime premiums, due to compensation of overtime at a straight time rate. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

32. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

33. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees including but not limited to deli men,

cashiers, cooks, and delivery persons, among others, employed by Defendants on or after the date that is 6 years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

34. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Members are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

35. The proposed Class is so numerous that a joinder of all Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than 40 Members of the Class.

36. Plaintiff's claims are typical of those claims that could be alleged by any Member of the Class, and the relief sought is typical of the relief, that would be sought by each Member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid overtime premium, due to compensation at a straight time rate; and (3) unpaid spread-of-hours premiums.

37. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

38. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

39. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this

action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

40. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

41. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

i. Whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

ii. What are and were Defendants' policies, practices, programs, procedures, protocols, and plans regarding the types of work and labor for which Defendants did not properly pay Plaintiff and Class members;

iii. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

iv. Whether Defendants failed to compensate Plaintiff and Class Members for all hours, including overtime, worked due to time shaving;

v. Whether Defendants compensated Plaintiff and Class Members their proper overtime rate for all hours worked in excess of 40 under the NYLL;

vi. Whether Defendants compensated Plaintiff and Class Members their spread of hour premiums for all hours worked in excess of 10 hours a day under the NYLL;

vii. Whether Defendants provided a wage notice, at the date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL;

viii. Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements under the NYLL; and

ix. Whether Defendants provided Plaintiff and Class Members forty (40) hours of paid sick leave a year, under the ESSTA.

## STATEMENT OF FACTS

*Plaintiff's Employment Background and Retaliation Claim*

42. In or around June 2025, Plaintiff began working as a deli worker for Defendants at their Brighton Flaming Grill location at 1023 Brighton Beach Ave., Brooklyn, NY 11235. As a deli worker, Plaintiff took orders and prepared meals for customers.

43. At all relevant times, Defendants paid Plaintiff $18 per hour in cash for all hours worked. FLSA Collective Plaintiffs and Class Members were compensated by Defendants in cash at similar hourly rates.

44. During all relevant times, Defendants scheduled Plaintiff to work 7 days per week, from 4 p.m. to 3 a.m. for a total of 11 hours per day and 77 hours per week with no meal break. FLSA Collective Plaintiffs and Class Members worked similar hours.

45. Defendants routinely shaved approximately 5 hours off Plaintiff's paycheck each week.

46. On or about September 26, 2025, Plaintiff complained to Individual Defendant about the hours missing from his paycheck. Specifically, Plaintiff complained that he worked approximately 77 hours per week, was paid at a straight time rate for 72 hours, and was never compensated for the remaining 5 hours worked per week. The same day, Individual Defendant terminated Plaintiff's employment in retaliation for his complaint about the missing hours.

*Unpaid Overtime Premiums Claim*

47. At all relevant times, Defendants failed to compensate Plaintiff with the proper overtime premiums for all hours worked in excess of 40 per workweek, in violation of the FLSA and the NYLL. Instead, Defendants paid Plaintiff a straight-time rate of $18 per hour for all overtime hours. FLSA Collective Plaintiffs and Class Members were similarly deprived of proper overtime pay, as Defendants paid them at a straight-time rate for all hours worked over 40 in a workweek.

48. Defendants knew that Plaintiff was scheduled to work in excess of 40 hours per week, as Individual Defendant personally created those schedules and discussed them with Plaintiff in September 2025. Defendants therefore knew that any failure to pay overtime premiums for those hours would necessarily result in a violation of the FLSA and NYLL.

49. Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members for all earned overtime wages in accordance with the FLSA and the NYLL.

*Timeshaving Claim*

50. At all relevant times, Defendants failed to compensate Plaintiff with proper wages, including overtime wages, for all hours he worked due to a policy of timeshaving, in violating of the FLSA and the NYLL.

51. Throughout Plaintiff's employment, Defendants routinely shaved approximately 5 hours per week from his actual time worked, and, consequently, did not compensate Plaintiff for all hours worked. Defendants timeshaving was facilitated by Defendants' willful failure to require Plaintiff to clock in or out or otherwise track Plaintiff's hours. Because Plaintiff already worked over 40 hours per week, these unpaid hours were always unpaid overtime hours.

52. At all relevant times, FLSA Collective Plaintiffs' and Class Members' hours were similarly untracked, and their recorded time was similarly shaved by approximately five hours per week.

53. Defendants knowingly and willfully operated their business with a policy of timeshaving Plaintiff's, FLSA Collective Plaintiffs', and Class Members' hours to avoid paying earned overtime wages in accordance with the FLSA and the NYLL.

54. Defendants knew that Plaintiff worked 77 hours per week, as Defendants were the ones to create such schedules. Therefore, Defendants knew that any failure to pay Plaintiff for all hours worked would result in failure to pay Plaintiff his earned wages.

*Spread-of-Hours Claims*

55. Further, at all relevant times, Defendants failed to provide Plaintiff and Class Members with their proper spread-of-hours premiums owed for workdays lasting ten or more hours, in violation of the NYLL.

56. Throughout his employment, Plaintiff regularly worked 11-hour shifts. However, Defendants never paid any spread-of-hours premiums to Plaintiff for each workday exceeding 10 hours in length.

57. At all relevant times, Defendants similarly failed to provide any spread-of-hours premiums to Class Members for their workdays lasting ten or more hours.

58. Defendants knew that Plaintiff and Class Members regularly worked days exceeding 10 hours in length as Defendants set the schedule, and therefore knew that Plaintiff and Class Members were entitled to spread-of-hours premiums for those workdays.

59. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff and Class Members their owed spread-of-hours premiums, in violation of the NYLL.

*Breach of Contract and Unjust Enrichment Claims*

60. When Defendants hired Plaintiff and Class Members, the parties entered into a contract. The covenant of good faith and fair dealing is implicit in every contract under New York law.

61. When Defendants failed to provide proper W-2 forms to Plaintiff and Class Members, Defendants breached the covenant of good faith by denying Plaintiff and Class Members the contract's expected value—specifically, the employer's share of Social Security and Medicare taxes for each employee.

62. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies, namely the employer's share of Social Security and Medicare taxes, that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

63. As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

64. An employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning 6 years prior to the filing of this Complaint.

65. Defendants are also liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

*WTPA Claims*

66. At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

67. At all relevant times, Defendants paid Plaintiff and Class Members in cash and failed to provide any paystubs to them with every weekly payment.

68. In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

69. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

70. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that

they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

71. By failing to report Plaintiff's and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

72. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to

take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

73. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

*ESSTA Violations Claim*

74. At all relevant times, Defendants employed 5 or more employees but failed to provide their employees with paid sick time in violation of the ESSTA.

75. During his employment, Plaintiff badly cut his finger while preparing food for a customer while in one of Defendants' Delis.

76. Following the incident, Plaintiff requested sick time-off to let his finger heal but Defendants denied Plaintiff's request and required him to finish his shift and come in the next day.

77. Defendants violated the ESSTA by denying Plaintiff compensated time-off.

78. At all relevant times, Defendants failed to provide Plaintiff and Class Members with forty (40) hours of paid sick leave each calendar year. As a result, Plaintiff and Class Members were either (i) required to work whilst sick, or (ii) forced to take sick leave without pay.

79. Defendants failed to provide Plaintiff and Class Members with paystubs during the statutory period, thereby depriving them of any information regarding their accrued and total leave balances.

80. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services if Plaintiff prevails.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

81. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

82. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 2007(a).

83. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

84. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

85. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their wages for all hours worked due to timeshaving, in violation of the FLSA.

86. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their overtime wages at the proper statutory rate of time-and-one-half for all hours worked in excess of 40 hours in a workweek, due to a policy of straight pay for overtime hours, in violation of the FLSA.

87. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by

appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

88. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

89. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

90. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving; and unpaid overtime premiums due to compensating employees at a straight time rate for overtime hours; plus an equal amount as liquidated damages.

91. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

92. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

93. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

94. Defendants knowingly and willfully failed to pay Plaintiff and Class Members all wages owed, including overtime, due to a policy of timeshaving, in violation of the NYLL.

95. Defendants willfully violated the rights of Plaintiff and Class Members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek due to an improper hourly rate, in violation of the NYLL.

96. Defendants knowingly and willfully failed to pay Plaintiff and Class Members their spread-of-hours premiums for shifts lasting longer than 10 hours in duration, in violation of the NYLL.

97. Defendants failed to properly notify employees of their overtime pay rate, in direct violation of NYLL.

98. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they did not provide any wage statements.

99. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

100. Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wage, including overtime, due to time shaving; unpaid premiums due to compensating employees at a straight time rate for overtime hours; unpaid spread-of-hours premiums; reasonable attorneys' fees; liquidated damages; and statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

**COUNT III**

**BREACH OF CONTRACT**

101. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

102. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11(2002).

103. Defendants breached this duty, and consequently the parties' contract, when they paid Plaintiff and Class Members in cash without withholdings or deductions, and further failed to provide proper W-2 forms. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, including Social Security and Medicare taxes, suffering a loss in the amount of the FICA taxes that Defendants should have, but did not, pay on their behalf.

**COUNT IV**

**UNJUST ENRICHMENT**

104. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

105. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and

good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

106. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenues Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either: (1) be liable to the IRS for the employer's share, or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

107. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff, and Class Members.

## COUNT V

## VIOLATION OF THE EARNED SAFE AND SICK TIME ACT

108. Plaintiff realleges and incorporates all of the foregoing paragraphs as if fully set forth herein and further alleges as follows.

109. Defendants are employers covered by ESSTA's sick leave provision as an "employers with between five and ninety-nine employees in any calendar year, each employee shall be provided with up to forty hours of paid sick leave in each calendar year." NY Lab. Law § 196-B(1)(b).

110. Defendants are required to give employees sick leave upon oral or written request for "a mental or physical illness, injury, health condition of such employee . . . regardless of whether such illness, injury, or health condition has been diagnosed or requires medical care at the time that such employee requests such leave." NY. Lab. Law § 196-B(4)(a).

111. Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper paid safe and sick leave as required under the ESSTA.

112. Due to Defendant's ESSTA violations, Plaintiff and Class Members seek all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT VI**

**RETALIATION IN VIOLATION OF FLSA, 29 U.S.C. § 215(a)(3)**
**and NYLL, N.Y. LAB. LAW § 215**
**(Brought individually)**

113. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

114. Plaintiff engaged in statutorily protected activity under the FLSA and NYLL when he complained to Individual Defendant about the hours missing from his paycheck on or about September 26, 2025.

115. Pursuant to 29 U.S.C. § 215(a)(3) and N.Y. LAB. § 215, Plaintiff was entitled to engage in FLSA and NYLL protected activities and assert his rights without retaliation.

116. Plaintiff's termination on or about September 26, 2025 was an adverse employment action.

117. The close temporal proximity between Plaintiff's complaint and his termination demonstrates a causal link between the complaint and his termination.

118. Plaintiff suffered damages as a result of the retaliatory termination, including but not limited to emotional distress and lost wages.

119. Defendant's actions were not for a legitimate, non-retaliatory reason.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, and the ESSTA;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to a policy of timeshaving, due under the FLSA and the NYLL;

d. An award of unpaid overtime wages, due to a straight time policy, due under the FLSA and the NYLL;

e. An award of unpaid spread-of-hours premiums, due under the NYLL;

f. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g. All applicable compensatory and punitive damages under the ESSTA.

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

j. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k. An award of compensatory damages for emotional pain, suffering, and humiliation.

l. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m. Designation of this action as a class action pursuant to F.R.C.P. 23;

n. Designation of Plaintiff as Representative of Class; and

o. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 12, 2026
New York, New York

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*